UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GARY EUGENE CHAPPELL,

                Plaintiff,                      **DECISION AND ORDER**

      v.

                                                      1:18-CV-01384 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Gary Eugene Chappell ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 13), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 13) is granted and Plaintiff's motion (Dkt. 9) is denied.

## BACKGROUND

Plaintiff protectively filed his application for SSI on October 22, 2014. (Dkt. 7 at 16, 87).[1] In his application, Plaintiff alleged disability beginning October 1, 2013, due to "back problems, mental health, depression, substance abuse, [and] short term memory problems." (*Id.* at 16, 74). Plaintiff's application was initially denied on July 9, 2015. (*Id.* at 16, 100-05). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") William M. Manico on August 2, 2017. (*Id.* at 16, 45-73). Plaintiff appeared in Buffalo, New York, and the ALJ presided over the hearing from Alexandria, Virginia. (*Id.*). On September 28, 2017, the ALJ issued an unfavorable decision. (*Id.* at 13-27). Plaintiff requested Appeals Council review; his request was denied on September 28, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-7). This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined

that Plaintiff had not engaged in substantial gainful work activity since October 22, 2014, the application date. (Dkt. 7 at 18).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease, depression, and anxiety. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of hypertension, alcohol use disorder, and sedative, hypnotic, or anxiolytic disorder were non-severe. (*Id.* at 19).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.04, 12.04, and 12.06 in reaching his conclusion. (*Id.* at 19-21).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the additional limitation that Plaintiff "retains the mental residual functional capacity to perform unskilled work." (*Id.* at 21).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 26).

At step five, the ALJ relied on the Medical-Vocational Guidelines ("the grids") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 26-27). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 27).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alterative, remand this matter to the Commissioner, arguing (1) the ALJ erred at steps four and five of the sequential evaluation, because the ALJ did not properly assess Plaintiff's mental functional limitations, and (2) the ALJ erred by not considering the testimony of a vocational expert. (*See* Dkt. 9-1). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A. The RFC Assessment

Plaintiff's first argument is that the ALJ did not make accommodations for the moderate mental limitations he found at step three of the sequential analysis, and failed to conduct "the proper more detailed analysis" of how Plaintiff's mental limitations affect his ability to function in a work setting. (Dkt. 9-1 at 13). Plaintiff contends that the ALJ was required to make a more detailed assessment of Plaintiff's mental RFC, rather than simply restrict him to unskilled work. (*Id.* at 16). In response, Defendant argues that substantial evidence supports the RFC, including the opinion offered by Susan Santarpia, Ph.D., Plaintiff's mental health and medical treatment records, and Plaintiff's reports of his daily activities. (Dkt. 13-1 at 9-14).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An RFC represents "the most work a claimant can still do despite limitations from an impairment and/or its related symptoms." *Farnham v. Astrue*, 832 F. Supp. 2d 243, 263 (W.D.N.Y. 2011) (citing 20 C.F.R.

§ 416.945(a)).  "An RFC finding will be upheld when it is supported by 'substantial evidence' in the record."  *Rapaport v. Commissioner*, No. 16-CV-2617 (VSB)(JCF), 2018 WL 3122056, at *4 (S.D.N.Y. June 26, 2018) (citing *Goodale v. Astrue*, 32 F. Supp. 3d 345, 356 (N.D.N.Y. 2012)).

As explained above, the ALJ found at step two of the sequential analysis that Plaintiff had severe mental impairments, including depression and anxiety.  At step three of the sequential analysis, the ALJ considered whether Plaintiff's mental impairments met the "paragraph B" criteria for Listings 12.04 and 12.06, including Plaintiff's limitations in the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing themselves.  (Dkt. 7 at 19).  The ALJ found that Plaintiff had moderate limitations for the areas of understanding, remembering, or applying information and adapting and managing himself, and mild limitations for the areas of interacting with others and concentrating, persisting, or maintaining pace.  (*Id*. at 20).

With regard to the ALJ's step three determination, the parties disagree as to whether the ALJ assessed Plaintiff with a mild or moderate limitation in the area of concentrating, persisting, or maintaining pace.  (*See* Dkt. 13-1 at 11-12 & Dkt. 14 at 3-4).  In making his assessment, the ALJ initially stated that "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has a *moderate limitation*."  (Dkt. 7 at 20) (emphasis added).  The ALJ then discussed the examination findings of Dr. Santarpia, the consultative examiner, and concluded that "[g]iven the evidence, I find that the claimant has *mild limitations in this domain*.  The undersigned will give greater weight here to the

consultative examiner [than] the . . . non examining state agency reviewer who gave a rating of moderate in the social realm *as the consultative examiner actually had the opportunity to interview claimant and since a rating of mild is more consistent with the overall evidence*." (*Id.*) (emphasis added).  Plaintiff argues that the ALJ's explanation – *i.e.*, his initial statement assessing moderate limitations, and his subsequent statements assessing mild limitations – creates "ambiguity in the decision warranting remand." (*See* Dkt. 14 at 3).  However, a complete reading of the ALJ's analysis reveals that the initial statement assessing moderate limitations appears to be a typographical error.  This is made clear by the ALJ's explanation of his finding, including his statement that a rating of mild was more consistent with the overall evidence, and his giving greater weight to the opinion of the consultative examiner, who found that Plaintiff had only some mild limitations. Remand is not required for clarification by the ALJ as to this point.

Regarding the RFC assessment, Plaintiff contends that the ALJ did not conduct the "detailed assessment" required by SSR 96-8p in determining that Plaintiff can perform unskilled work. (Dkt. 9-1 at14).  He cites to the policy interpretation of SSR 96-8p, which provides that "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad

categories found in paragraphs B and C. . . ." *See* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996); *see also* Dkt. 9-1 at 14.

Plaintiff's contention that the ALJ did not conduct the requisite analysis is belied by the record, which demonstrates that the ALJ considered Plaintiff's ability to function in a work setting, including his ability to perform the mental activities required for unskilled work. "The mental activities 'generally required by competitive, remunerative, unskilled work' include: (1) '[u]nderstanding, remembering, and carrying out simple instructions', (2) '[m]aking judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions', (3) '[r]esponding appropriately to supervision, co-workers and usual work situations', and (4) '[d]ealing with changes in a routine work setting.'" *Ricci v. Berryhill*, No. 3:16-cv-01161 (SRU), 2018 WL 1532602, at *9 (D. Conn. Mar. 29, 2018) (quoting SSR 96-9p, 1996 WL 374185, at *9 (S.S.A. July 2, 1996)); *see also Ehnes v. Colvin*, No. 1:15-cv-00828(MAT), 2018 WL 739098, at *2 (W.D.N.Y. Feb. 6, 2018) (same). "By definition, unskilled work requires little or no judgment to do simple duties that can be learned on the job in a short period of time, and requires working primarily with objects, rather than data or people." *Miller v. Berryhill*, No. 6:16-cv-06467(MAT), 2017 WL 4173357, at *6 (W.D.N.Y. Sept. 20, 2017) (citing SSR 85-15, 1985 WL 56857, at *4 (S.S.A. Jan. 1, 1985)).

This is not a case where the ALJ failed to discuss or evaluate the evidence relevant to Plaintiff's mental functioning. Contrary to Plaintiff's implication that the ALJ failed to

continue his analysis of Plaintiff's mental limitations following the step three analysis, the ALJ explained:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. *The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental functional analysis*.

(Dkt. 7 at 21) (emphasis added). The ALJ then identified and discussed specific evidence in the record relevant to Plaintiff's mental functioning, and concluded that Plaintiff was capable of performing unskilled work. For example, the ALJ discussed the opinion of Dr. Santarpia, which he gave "great weight." (*Id*. at 25). Dr. Santarpia conducted an in-person examination of Plaintiff on June 4, 2015. (*Id*. at 394-97). Dr. Santarpia observed that Plaintiff was oriented to person, place, and time, his attention and concentration and recent and remote memory skills were intact, he had "average to low average" cognitive functioning, and fair insight and judgment. (*Id*. at 396). Dr. Santarpia offered the following medical source statement:

> [Plaintiff] presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, and appropriately deal with stress within normal limits. Mild impairment is demonstrated in performing complex tasks independently and relating adequately with others. Difficulties are caused by inability to receive medication that stabilized him in the past.
>
> The results of the present evaluation appear to be consistent with psychiatric and substance abuse problems, but in and of itself, this does not appear to be

significant enough to interfere with the claimant's ability to function on a daily basis.

(*Id.*). Dr. Santarpia's medical source statement – which addresses Plaintiff's ability to follow and understand instructions, maintain attention and concentration, make appropriate decisions, deal with stress, and relate to others – speaks directly to the mental activities required by unskilled work. The ALJ discussed these findings by Dr. Santarpia in formulating the RFC:

> [Dr. Santarpia] opined that the claimant would have no difficulty following, understanding, and performing simple tasks independently. She added that the claimant had no problems with maintaining attention, concentration, or a regular schedule, and that he could learn new tasks, make appropriate decisions, and appropriately deal with stress within normal limits. On the other hand, Dr. Santarpia opined that the claimant had mild limitations in his ability to perform complex tasks independently, as well as with relating to others. After considering it, I find that Dr. Santarpia's opinion is supported by her evaluation findings. During the evaluation, Dr. Santarpia noted that the claimant was cooperative and responsive and that [his] manner of relating, social skills, and overall presentation was adequate. Dr. Santarpia added that the claimant's cognitive functioning was in the average to low range, but that his general fund of information was appropriate. She further found that the claimant's thought processes were coherent and goal directed, that that [his] attention, concentration and memory skills were intact. There were some concerns about his ability to interact with other[s]; however, Dr. Santarpia noted that this had only a mild effect on the claimant's ability to engage.

(*Id.* at 25) (internal citations omitted). Dr. Santarpia's opinion supports the ALJ's assessment that Plaintiff can perform unskilled work without additional limitations, as Dr. Santarpia found that Plaintiff's mental functioning was mostly normal, save for a mild

impairment in performing complex tasks and relating with others. The ALJ was permitted to rely on this opinion evidence in assessing Plaintiff's mental functional limitations.

In addition to relying on the opinion of Dr. Santarpia, the ALJ considered Plaintiff's reports of his ability to function, including: he can manage his personal care, including dressing, bathing, and grooming; he can perform activities of daily living, but it takes him longer to perform these activities; he has some difficulty performing household chores due to difficulty bending and reaching, and he receives help with these chores; treatment notes showed that Plaintiff has no difficulty managing his money, concentrating on relatively simple tasks, such as watching television, and at times he performs complex thinking, as he reported that he enjoys playing chess; Plaintiff reported that he can ride in a car and when he leaves his home, he has no problems going out alone; and he cares for his two minor children. (*Id*. at 24). The ALJ concluded that while "there is little doubt that the claimant's mental health impairments limit his ability to perform various activities . . . there is simply not enough evidence to suggest that they leave him functionally unable to work in the above-listed manner." (*Id*.). The ALJ was permitted to consider Plaintiff's reports of his functioning when assessing the mental RFC.

Finally, the ALJ considered the opinion of Dr. Kleinerman, the state agency medical examiner. (*Id*. at 24-25). Dr. Kleinerman opined that Plaintiff retained the capacity to perform work activity, but that Plaintiff required limitations for his ability to interact with the general public. (*Id*. at 25; *see also id*. at 79-80). The ALJ afforded Dr. Kleinerman's opinion "partial weight." (*Id*. at 25). The ALJ considered that while "there is some evidence to suggest that the claimant has difficulty with socializing with others, the

evidence as a whole does not suggest that he is more than mildly limited in this area. In fact, evaluation notes generally described him as cooperative and responsive, and note[d] [he] had an adequate manner of relating, and social skills. Moreover, little was provided, aside from the claimant's own reports, that he has difficulty engaging with others." (*Id*.).

"[W]hat is most essential in [determining the RFC] is evaluation of functional effects of mental impairments on work-related activities such as understanding, carrying out, and remembering instructions; using judgment in making work-related decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting." *Golden v. Colvin*, No. 5:12-cv-665 (GLS/ESH), 2013 WL 5278743, at *3 (N.D.N.Y. Sept. 18, 2013) (citing SSR 96-8p, 1996 WL 374184, at *6). As explained above, it is clear from the written determination that the ALJ considered Plaintiff's functioning in each of these categories, primarily by relying on Dr. Santarpia's examination and opinion of Plaintiff's mental functional limitations. Plaintiff's citation to *Karabinas v. Colvin*, 16 F. Supp. 3d 206, 216 (W.D.N.Y. 2014), where the ALJ failed to perform a detailed assessment of the plaintiff's mental limitations and "gave no consideration to the mental limitations he identified at step 3 when he was making the RFC determination," is therefore misplaced. Remand is not required on this basis.

To the extent Plaintiff argues that the ALJ's findings at step two and step three of the sequential analysis required the ALJ to include additional mental limitations in the RFC (*see* Dkt. 9-1 at 15), the Court disagrees. "[A]n ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis*

and is intended only to screen out the very weakest cases." *McIntyre v. Colvin,* 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995)). While the analysis at steps two and three concerns the *functional effects* of mental impairments, the RFC analysis at step four specifically considers *work-related* physical and mental activities in a *work setting*. *See Golden*, 2013 WL 5278743, at *3. As a result, a finding at steps two or three does not automatically translate to an identical finding at step four. The ALJ explained as much at the conclusion of his step three analysis. (*See* Dkt. 7 at 21 ("The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.")). The ALJ's findings at steps two and three of the sequential analysis, *i.e.*, that Plaintiff has severe mental impairments, but these impairments cause only mild and moderate limitations, are consistent with Dr. Santarpia's opinion of Plaintiff's mental functioning, as well as the ALJ's assessment that Plaintiff can perform only unskilled work.

In sum, the ALJ adequately considered the evidence in the record in formulating Plaintiff's RFC. Simply because the RFC does not contain additional mental limitations does not mean that the ALJ did not consider whether additional limitations were necessary; rather, the ALJ explained that, based on the evidence in the record, limiting Plaintiff to performing only unskilled work adequately accounts for Plaintiff's mental limitations. (*See id*. at 26 ("Based on the claimant's testimony and the medical record, I find that he is capable of engaging in unskilled, light exertional work in a manner consistent with his

above-listed residual functional capacity.")).  Accordingly, remand is not required on this basis.

### B. The Step Five Determination

Plaintiff's second argument is premised on the success of his first argument. Specifically, Plaintiff contends that, considering Plaintiff's non-exertional limitations, the ALJ was required to rely on the testimony of a vocational expert, rather than the grids, in concluding that Plaintiff can perform certain jobs.  (Dkt. 9-1 at 16).

"Generally speaking, if a claimant suffers only from exertional impairments, e.g., strength limitations, then the Commissioner may satisfy her burden by resorting to the applicable grids."  *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).  "If, however, [the claimant] 'suffer[ed] from additional "nonexertional" impairments, the grid rules may not be controlling' and 'the guidelines c[ould] not provide the exclusive framework for making a disability determination.'"  *Id*. at 39 (quoting *Bapp v. Bowen,* 802 F.2d 601, 604-05 (2d Cir. 1986)) (second and third alterations in original).  Specifically, "[i]f a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert."  *Petersen v. Astrue*, 2 F. Supp. 3d 223, 239 (N.D.N.Y. 2012) (citations omitted).

As explained above, the ALJ's assessment of Plaintiff's mental limitations is proper and well-supported by the record.  The ALJ explained that "the 'grid rules' contemplate only unskilled work," (Dkt. 7 at 21 n.2), and that the assessed limitations did not affect the

occupational base for unskilled light work (*id.* at 27).  Because the ALJ did not assess limitations that significantly erode the occupational base for light, unskilled work, he was not required to rely on the testimony of a vocational expert.  *See, e.g., Bombard-Senecal v. Commissioner*, No. 8:13-cv-649(GLS), 2014 WL 3778568, at *4 (N.D.N.Y. July 31, 2014) ("[B]ecause the ALJ determined that [the plaintiff] can perform the full range of unskilled light work that requires only occasional interaction with others and no climbing of scaffolds, his reliance on the Medical Vocational guidelines was appropriate."); *see also Mahon v. Colvin*, No. 13 Civ. 8817(AT)(KNF), 2015 WL 5697861, at *3 (S.D.N.Y. Sept. 28, 2015) ("Having concluded that Plaintiff's identified mental impairments 'have little or no effect on the occupational base of unskilled light work,' . . . ALJ Gonzalez properly relied on the medical vocational guidelines alone to determine Plaintiff's disability status."); *Dowling v. Commissioner*, No. 5:14-CV-0786(GTS/ESH), 2015 WL 5512408, at *14 (N.D.N.Y. Sept. 15, 2015) (ALJ properly relied on the grids where her "findings essentially mirror[ed] the Ruling's parameters of mental capacity for unskilled sedentary work.").  Simply because Plaintiff believes the ALJ should have assessed additional non-exertional limitations does not require the ALJ to consult a vocational expert.  *See Guija v. Commissioner*, No. 16-CV-5605 (ENV), 2019 WL 4279425, at *7 (E.D.N.Y. Sept. 10, 2019) ("Case law in the Second Circuit holds that, after determining a claimant's residual functional capacity, an ALJ is not necessarily precluded from using the Grids exclusively at step five of the sequential evaluation process, even if the claimant complained about [a] non-exertional impairment.").  Accordingly, remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:  April 21, 2020
          Rochester, New York